UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INDIAN HARBOR INSURANCE
COMPANY, and THE TRUSTEES OF THE
UNIVERSITY OF PENNSYLVANIA,

Plaintiffs,

- against -

FACTORY MUTUAL INSURANCE
COMPANY d/b/a FM GLOBAL
INSURANCE COMPANY,

Defendant.



**OPINION AND ORDER**

05 Civ. 2564 (PKL)

### APPEARANCES

LAW OFFICES OF CHARLES PLATTO, P.L.C.
Charles Platto, Esq.
Nolan Burkhouse, Esq.
20 West 64th Street
New York, NY 10024
- and -
8 Beaver Meadow Road
P.O. Box 1111
Norwich, VT 05055

Attorneys for Plaintiffs

VENZIE PHILLIPS & WARSHAWAR
Kevin Gerard Amadio, Esq.
20332 Chancellor Street
Philadelphia, PA 19103

Attorneys for Plaintiff Trustees of the University of Pennsylvania

BUDD LARNER, P.C.
Norman G. Sade, Esq.
11 Penn Plaza, 5th Floor
New York, NY 10001
- and -
Robert M. Wolf, Esq.
150 John F. Kennedy Parkway
Short Hills, NJ 07078-2703

Attorneys for the Defendant

**LEISURE, <u>District Judge</u>:**

Plaintiffs, The Trustees of the University of Pennsylvania ("Penn") and Indian Harbor Insurance Company ("Indian Harbor"), bring this action for declaratory judgment, pursuant to 28 U.S.C. § 2201, against defendant Factory Mutual Insurance Company d/b/a FM Global ("FM"). Plaintiffs jointly seek a declaration that an insurance policy issued by FM to Penn provides coverage for damages Penn sustained at its veterinary hospital. Indian Harbor further seeks a judgment declaring that its own policy with Penn covers only those damages in excess of those covered by the FM policy or, in the alternative, that Indian Harbor's obligation should be apportioned based on the respective policy limits of the Indian Harbor and FM policies.

Defendant FM filed the instant motion to transfer venue to the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1404(a), on April 25, 2005. It argues that transfer would advance the convenience of parties and witnesses as well as the interests of justice. Plaintiffs Indian Harbor and Penn oppose the motion and wish to remain in the Southern District of New York. For the reasons that follow, the Court finds that FM has borne its burden, and defendant's motion to transfer is granted.

## **BACKGROUND**

Plaintiff, Penn, is a Pennsylvania not-for-profit corporation, which owns the New Bolton Center Veterinary Hospital ("NBC") located in Chester County, Pennsylvania. (Complaint ("Compl.") ¶¶ 1,6.) Penn is insured by plaintiff Indian Harbor and defendant FM under two separate insurance policies. (Id. ¶ 1.) Indian Harbor is incorporated in North Dakota, but conducts insurance business throughout the United States, including New York. (Id. ¶ 5.) FM is incorporated and has its primary place of business in Rhode Island, and conducts insurance business in New York. (Id. ¶ 7.)

FM's policy insures Penn against all risk of property loss and damages up to $1 billion, from July 1, 2003 to July 1, 2004. (Id. ¶ 8.) The FM policy was negotiated, underwritten, issued and serviced by Thomas Tarczali, a Connecticut-based Senior Account Manager at FM. (Affidavit of Thomas E. Tarczali ("Tarczali Aff.") ¶ 2.) Tarczali negotiated the policy with Ian Anderson, a Vice President at Marsh USA, Penn's insurance broker. This occurred primarily in Connecticut, but Tarczali also met with Andersen and Kenneth Hoffman, Penn's Director of Risk Management and Insurance, in Pennsylvania. (Id. ¶ 3.) Tarczali sent the binder that led to the issuance of the FM policy to Hoffman in Pennsylvania on July 1, 2003, and issued the FM policy in Connecticut and had it delivered to Marsh USA's New York office on July 10, 2003. (Id. ¶ 4.)

Indian Harbor issued a Pollution and Remediation Legal Liability Policy that provided coverage for Penn from July 1, 2003 to July 1, 2006. The Indian Harbor policy coverage was limited to $2 million for each loss, remediation or legal defense expenses, and to $6 million in the aggregate, with a self-insured retention (akin to a deductible) of $50,000, and was to cover loss in excess of that covered by any other valid and collectible insurance policy. (Id. ¶ 9.) The Indian Harbor policy contains a forum selection clause under which Penn and Indian Harbor agree to resolve any dispute arising from the policy in New York State, and submit to New York State law. (Affidavit of Nolan C. Burkhouse, Esq. ("Burkhouse Aff.") at 11.)

In March 2004, a number of animals at the NBC fell victim to an outbreak of Salmonella Newport which impacted several of NBC's barns and its neo-natal care unit. (Compl. ¶¶ 10-11, 14.) NBC's efforts to control the outbreak were unsuccessful, and Penn was forced to close the center completely from May 2004 through August 2004. (Id. ¶ 12.) In order to decontaminate the clinic, NBC sandblasted its walls, repainted, removed semi-porous materials, including mats

and flooring, and undertook additional cleaning measures. (Id. ¶ 13.) Penn reported its claim to both insurers, asserting a loss to property of $3 million, less any deductible or self-insured retention, and seeking to recover cleanup costs and business interruption expense. (Id. ¶¶ 15-16.) FM assigned Steven Gioia, a Pennsylvania-based General Adjuster for the company, to assess the Penn claim. (Affidavit of Steven A. Gioia ("Gioia Aff.") ¶ 2.) Gioia traveled to the site and physically inspected the claimed damage.

By letter to Penn on December 1, 2004, Indian Harbor stated it was prepared to cover Penn's loss in excess of that covered by the FM policy. (Compl. ¶ 17, Ex. C.) However, on February 16, 2005, FM denied Penn's claim on the grounds that Penn failed to show physical loss to property, and that the claimed loss fell under the pollution exclusion in the FM policy. (Id. ¶ 18.) FM also claimed that the Indian Harbor policy should apply before the FM policy. (Id. ¶ 18, Ex. D.)

On March 4, 2005, Indian Harbor and Penn filed the instant suit against FM seeking declaratory judgment that the FM policy (1) provides valid and collectible insurance for Penn's loss up to $1 billion, subject to Penn's applicable deductible; (2) is sufficient to cover Penn's loss; and, (3) must be exhausted before the Indian Harbor policy applies. (Id. ¶ 19.) In the alternative, Indian Harbor maintains that coverage should be apportioned in accordance with the respective coverage limits of the FM and Indian Harbor policies. (Id. ¶ 19.) FM now petitions the Court for a transfer of venue to the Eastern District of Pennsylvania under 28 U.S.C. § 1404(a), for the convenience of parties and witnesses, and in the interest of justice.

# DISCUSSION

I.  Transferring Venue

Title 28 United States Code Section 1404(a) provides that, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. 1404(a). The statute is purposed to prevent waste "'of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Generale Bank, New York Branch v. Wassel, 779 F. Supp. 310, 313 (1991) (Leisure, J.) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)).

Defendant-movant bears the burden of establishing that plaintiffs' choice of forum is inappropriate. Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978), *cert. denied*, 440 U.S. 908 (1979) (citations omitted). Defendant must establish that (1) the action is one that "might have been brought" in the proposed transferee district,[1] 28 U.S.C. § 1404(a), and (2) the transfer is appropriate given the convenience of parties and witnesses and in the interest of justice. See Royal Ins. Co. of Am. v. Tower Records, Inc., No. 02 Civ. 2612, 2002 WL 31385815, at *2 (S.D.N.Y. Oct. 22, 2002) (Leisure, J.); Lesser v. Camp Wildwood, No. 01 Civ. 4209, 2002 WL 1792039, at *2 (S.D.N.Y. Aug. 2, 2002); Reliance Ins. Co. v. Six Star, Inc., 155 F. Supp. 2d 49, 56 (S.D.N.Y. 2001). The moving party must "make a clear-cut showing that transfer is in the best interests of the litigation." Miller v. Bombardier Inc., No. 93 Civ. 0376, 1993 WL 378585, at *2 (S.D.N.Y. Sept. 23, 1993) (Leisure, J.) (citing Schieffelin & Co. v. Jack

---

[1] Section 1404(a) provides that an action could properly have been brought in another forum "if, at the time the action was originally filed, the transferee court would have had subject matter jurisdiction and personal jurisdiction over the defendants, and if venue would have been proper in the transferee court." Posven, C.A. v. Liberty Mut. Ins. Co., 303 F. Supp. 2d 391, 401 (S.D.N.Y. 2004) (citations omitted). The parties agree that the claim could have been brought in the proposed transferee court, the Eastern District of Pennsylvania.

Co. of Boca, Inc., 725 F. Supp. 1314, 1321 (S.D.N.Y. 1989)); see also Factors Etc., 579 F.2d at 218. Movant must "name the witnesses who will be appearing and describe their testimony so that the court may measure the inconvenience caused by locating a lawsuit in a particular forum." Schieffelin & Co., 725 F. Supp. at 1321 (citing, *inter alia*, Factors, 579 F.2d at 218). "[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). "A court of appeals will issue a writ of mandamus to correct a district court's disposition of a section 1404 transfer motion for a clear abuse of discretion." Warrick v. General Elec. Co., 70 F.3d 736, 740 (2d Cir. 1995).

The Court assesses the balance of convenience and the interest of justice by weighing: (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof;[2] (3) the convenience of the parties;[3] (4) the locus of the operative

---

[2] The Court does not consider defendant's claim that many documents may be found in Pennsylvania, as the location of documents is entitled to little weight unless defendant makes a "detailed showing of the burden it would incur absent transfer." Royal Ins., 2002 WL 31385815, at *6 (finding an inadequate showing where the policy documents were in movant's control in the transferee district, and that other relevant documents were likely to be in or near that district). FM fails to make a detailed showing, merely speculating that most relevant documents are in Pennsylvania and no documents are in New York. (Def.'s Mem. at 17.) Moreover, this factor is unpersuasive where the documents and other proof are not demonstrably bulky or otherwise difficult to transfer. Manao Invests., Inc. v. Stouts Brunswick Assocs. Ltd. P'ship, No. 96 Civ. 7100, 1997 WL 53200, at *1 (S.D.N.Y. Feb 10, 1997) (citing GPA Inc. v. Liggett Group, Inc., No. 94 Civ. 5735, 1994 WL 537017, at *3 (S.D.N.Y. Oct. 4, 1994)); Stinnes Interoil, Inc. v. Apex Oil Co., 604 F. Supp. 978, 983 (S.D.N.Y. 1985) (Leisure, J.).

[3] The Court does not consider defendant's claimed inconvenience as the inconvenience of defending a suit in the Southern District of New York "cannot be overwhelming" when defendant previously appeared in actions in that district. Bristol-Myers Squibb Co. v. Andrx Pharm., LLC, No. 03 Civ. 2503, 2003 WL 22888804, at *4 (S.D.N.Y. Dec. 5, 2003). As plaintiffs point out and FM concedes, FM has brought suit in this district before. See Allendale Mut. Ins. Co. v. Excess Ins. Co., 970 F. Supp. 265 (S.D.N.Y. 1997). In 1999, Allendale Mutual Insurance Company merged with Arkwright Insurance Company and Protection Mutual

facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interest of justice based on the totality of the circumstances. See Posven, C.A., 303 F. Supp. 2d at 404; Reliance Ins., 155 F. Supp. 2d at 56-57; Trehern v. OMI Corp., No. 98 Civ. 0242, 1999 WL 47303, at *2 (S.D.N.Y. Feb. 1, 1999). "There is no rigid formula for balancing these factors and no single one of them is determinative." Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) (citing S & S Mach. Corp. v. Gen. Motors Corp., No. 93 Civ. 3237, 1994 WL 529867, at * 7 (S.D.N.Y. Sept. 28, 1994)). "Instead, weighing the balance 'is essentially an equitable task' left to the Court's discretion." Citigroup, 97 F. Supp. 2d at 561 (citing First City Nat. Bank & Tr. Co. v. Simmons, 878 F.2d 76, 80 (2d Cir. 1989)).

A. Convenience of Witnesses

To determine whether transfer is appropriate, the Court looks to the "center of gravity of the litigation," as judged primarily by the convenience of witnesses. Cuzzupoli v. Metro-North Commuter R.R., No. 02 Civ. 7947, 2003 WL 21496879, at *3 (S.D.N.Y. June 30, 2003) (citation omitted). The convenience of non-party witnesses is accorded more weight than that of party witnesses. Royal & Sunalliance v. British Airways, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001) (citing Nieves v. Am. Airlines, 700 F. Supp. 769, 773 (S.D.N.Y. 1988)).

Plaintiffs argue that the convenience of witnesses carries little weight in this case because resolution of the dispute between plaintiffs and defendant turns on a legal determination of the extent to which, if at all, FM's policy covers Penn's loss. (Pls.' Opp'n at 5.) Plaintiffs claim that, because most insurance coverage disputes are decided as a matter of law on motions for

---

Insurance Company to form FM. See http://www.fmglobal.com/about/facts/facts_history.asp. Thus, the convenience to FM is not a factor in the Court's balancing test.

summary judgment, witness convenience is not an important factor. (Id. citing Cont'l Ins. Cos. v. Wickes Cos., Inc., No. 90 Civ. 8215, 1991 WL 183771, at *3 (S.D.N.Y. Sept. 6, 1991).) However, here the underlying issue is arguably a question of fact as to whether the Salmonella outbreak constituted pollution such that the damage it caused may be excluded from the FM policy. It is clear that Penn and its employees on staff at the time believe the damage was not caused by pollution; an assessment disputed by FM and its on-site inspection conducted by Gioia. Resolution of this dispute could, therefore, require witness testimony as to the outbreak and its effects. See also Royal Ins., 2002 WL 31385815, at *5 (rejecting plaintiff's similar argument because the convenience of witnesses was a "'crucial factor' supporting the transfer of insurance contract interpretation disputes"). Thus, the convenience of specifically identified, material witnesses is an important consideration here. See Factors, 579 F.2d at 218 (citations omitted) (A party seeking transfer "on account of the convenience of witnesses under § 1404(a) . . . must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover.") The Court considers only witnesses residing in the proposed transferee district, the Eastern District of Pennsylvania. Pilates, Inc. v. Pilates Inst., 891 F. Supp. 175, 183 (S.D.N.Y. 1995) (quoting Editorial Musical Latino Americana, S.A., 829 F. Supp. 62, 66-67 (S.D.N.Y. 1993)).

At the time of FM's investigation, Penn supplied Gioia with the names of veterinary doctors, researchers and administrators with knowledge of the cause of the Salmonella outbreak. FM now claims that these people are material witnesses in the instant dispute: (1) Dr. Helen Aceto, NBC's Interim Biosecurity Officer; (2) Dr. David M. Nunamaker, V.M.D., NBC's Chair of Clinical Studies; (3) Dr. Barbara Dallap, NBC's Assistant Professor of Emergency Medicine and Critical Care; (4) Bruce Rappoport, NBC's Director; (5) Dr. Shelley Rankin, Ph.D., NBC's

Assistant Professor and Clinical Epidemiologist; (6) Barry Stupine, NBC's Associate Dean; (7) Erika Gross, an employee in Penn's Risk Management Office in Pennsylvania; (8) Kenneth Hoffman, same; (9) Joanna Zappala, a Pennsylvania-based employee of Penn's insurance broker, Marsh USA; (10) and, Joseph Latrechiano, same. (Gioia Aff. ¶¶ 3-4.)

### 1. Propriety of Considering Plaintiffs' Witnesses

FM has sufficiently identified and described the possible testimony of ten Pennsylvania-based witnesses: Steven Gioia, FM's General Adjustor, five NBC staffers, and two employees of Penn's Office of Risk Management.[4] (Id. ¶¶ 1-3.) Seven of these material witnesses are Penn employees, (Id. ¶ 3). Consistent with their argument that this claim is to be decided as a matter of law, plaintiffs do not directly designate these individuals as their witnesses. (Hoffman Aff. ¶ 5). However, plaintiffs advised the Court that the individuals named will be made available and "may be called to testify in this case at trial." (Id.) The Court therefore considers them plaintiffs' witnesses for the purposes of its balancing test.

Several courts have held that a defendant cannot cite to the inconvenience of plaintiff's witnesses in support of its motion to transfer venue. See Williams v. Nat'l Hous. Exch. Inc., 898 F. Supp. 157, 161 (S.D.N.Y 1995) (citation omitted); Levine v. Arabian Am. Oil Co., No. 84 Civ. 2396, 1984 WL 1247, at *2 (S.D.N.Y. Nov. 16, 1984) (citations omitted). This District has at times taken a broader approach to assessing witness convenience where plaintiff chooses a

---

[4] FM has not alleged with sufficient specificity the content of the Philadelphia-based Marsh USA brokers' testimony. FM merely states that the brokers are "personnel familiar with the claim and coverage issues related to the claim" (Def.'s Mem. at 15), and provides no further information regarding their anticipated testimony. As a result, the Court does not consider them in its convenience analysis. Further, because these are the only two non-party witnesses proffered, the Court does not address defendant's argument that transfer is necessary to ensure witnesses are subject to the trial court's subpoena power. See TM Claims Serv. v. KLM Royal Dutch Airlines, 143 F. Supp. 2d 402, 406 (S.D.N.Y. 2001) (citations omitted) (finding that the availability of process is only a factor as to third-party witnesses).

9

forum other than its state of residence, and where the events giving rise to the action did not occur in the forum state. Cuzzupoli, 2003 WL 21496879, at *3 n.1. However, Cuzzupoli is distinguishable from the instant action because Cuzzupoli evaluated plaintiff's physician-witnesses, stating they were "characteristically reluctant to interrupt their practices to appear at trials, even in the localities where they treat their patients," and were notably "witnesses for whom participation in these proceedings does not arise out of the usual course of their business." 2003 WL 21496879, at *3, 6. By contrast, the Salmonella investigation here was the responsibility of the Penn and NBC staff. Moreover, all seven of plaintiffs' witnesses are in Penn's control and will be made available for trial. Accordingly the instant case does not provide the same justification for considering plaintiffs' witnesses as did Cuzzupoli, and the Court will not consider the materiality of their testimony. As a result, the Court weighs only the convenience of Gioia, FM's Pennsylvania-based claims adjuster.

2. Materiality of Gioia's Proposed Testimony

While "[c]ourts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district," Cuzzupoli, 2003 WL 21496879, at *3 (citations and quotations omitted), only material witnesses are afforded substantial weight in the balancing calculus. "When weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." Royal & Sunalliance, 167 F. Supp. 2d at 577 (citation omitted).

FM argues that Gioia is material because he is "familiar with the claim and coverage issues related to the claim." (Def.'s Mem. at 15). Plaintiffs argue that Gioia is immaterial because the matter should be decided on the law, maintaining that "this is an insurance coverage matter about which there is little dispute regarding the facts." (Pls.' Opp'n at 5.) Plaintiffs

further assert that claims adjusters are generally considered by the Courts in this District to be immaterial witnesses. (Pls.' Opp'n at 6 (citing Mitsui Marine & Fire Ins. Co. v. Nankai Travel Int'l Co., 245 F. Supp. 2d 523, 526 (S.D.N.Y. 2003); Royal & Sunalliance, 167 F. Supp. 2d at 577-78; TM Claims, 143 F. Supp. 2d at 406).)

First, the Court notes that these cases are inapposite to evaluating Gioia's testimony because they stand for the proposition that, where the claims adjuster and witnesses are geographically distinct, eye witness testimony trumps that of the claims adjuster's evaluation of the cold record. Here, both the claims adjuster and the eye witnesses reside in Pennsylvania. Further, Gioia actually visited the NBC site, unlike the claims adjusters in TM Claims Serv. and Royal & Sunalliance.

Second, it is clear to the Court that factual issues require resolution in this litigation. Plaintiffs' assertion that the FM policy provides "valid and collectible insurance for Penn's loss" (Compl. ¶ 19) is directly at odds with FM's defense that Penn failed to show physical loss to property outside of that excluded from coverage under the FM policy's pollution exclusion. (Defendant FM's Answer at 6.) FM disputes not only the legal breadth of its policy coverage, but also the sufficiency of Penn's claimed loss. This controversy turns, in part, on a categorization of the loss at issue; an inherently factual determination requiring the testimony of Penn and NBC staff juxtaposed against Gioia's onsite analysis.

Thus, Gioia is a material witness and his convenience weighs in favor of transfer.[5]

---

[5] The Court acknowledges that the measure of Gioia's inconvenience is relative to the proximity of the Eastern District of Pennsylvania to the Southern District of New York. See, e.g., Zangiacomi v. Saunders, 714 F. Supp. 658, 661 (S.D.N.Y. 1989) (finding transfer of venue based on witness inconvenience unjustified where witnesses reside in a neighboring state and the alternative district court is a relatively short distance (75 miles) from the Southern District of New York).

B.  Locus of the Operative Facts

"Where there is no material connection between the district and the operative facts, . . . the interests of justice require the transfer of [the] action." Manao Invests, 1997 WL 53200, at *2 (alteration in original) (quotation omitted). "When determining the locus of operative facts in a declaratory judgment action concerning the interpretation of an insurance policy contract, this Court has considered where the insurance contract was made." Royal Ins., 2002 WL 31385815, at *3-4 (holding that neither the New York location of the terrorist attack giving rise to the policyholder's claim nor the New York-based claims adjustor rendered New York the locus of operative facts because New York was not the site of the contract's execution).

Here, while it is unclear whether Pennsylvania is the locus of operative facts, it is clear that New York is not, because: (1) the FM policy was underwritten, negotiated, issued and serviced in Connecticut, (Tarczali Aff. ¶¶ 1-2), and (2) the policy was made either in Connecticut between Marsh and FM insurance personnel (id. ¶ 3) or in Philadelphia, between FM and Penn staff to whom FM issued the policy (id. ¶ 4). That FM also sent the policy to Marsh's New York office as a courtesy (id.) is insufficient to show the contract was created in New York. Moreover, the policy clearly states that it was issued to the Trustees of the University of Pennsylvania. (Compl. Ex. A.) FM has demonstrated that its policy was not made in the Southern District of New York, and that the policy was formed, at least in part, in Pennsylvania. The locus of operative facts analysis therefore favors transfer to Pennsylvania.

C.  Plaintiffs' Forum Selection Power

Plaintiffs' choice of forum "is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." Royal & Sunalliance, 167 F. Supp. 2d at 576 (citing Warrick, 70 F.3d at 741). To overcome the presumption in favor of

12

plaintiffs, defendant must "make a clear showing that the proposed transferee district is a more convenient one, and that the interests of justice would be better served by a trial there." Zangiacomi, 714 F. Supp. at 660 (quoting Schneider v. Sears, 265 F. Supp. 257, 263 (S.D.N.Y. 1967)). "Where the inconvenience to the parties and witnesses are evenly balanced, the plaintiff is entitled to his choice of forum." Id. (quoting Teachers Ins. & Annuity Ass'n of Am. v. Butler, 592 F. Supp. 1097, 1106 (S.D.N.Y. 1984)).

However, plaintiffs' chosen forum carries less weight when no party resides in the forum nor is it the locus of operative facts. See Chet Baker Enters., L.L.C. v. Fantasy, Inc., 257 F. Supp. 2d 592, 597 (S.D.N.Y. 2002) (citing Dwyer v. Gen. Motors Corp., 853 F. Supp. 690, 694 (S.D.N.Y. 1994)); Royal & Sunalliance, 167 F. Supp. 2d at 576 ("[T]he weight accorded to a plaintiff's choice of venue is significantly diminished . . . where the operative facts have no connection to the chosen district."); Eskofot A/S v. E.I. Du Pont De Nemours & Co., 872 F. Supp. 81, 96 (S.D.N.Y. 1995) (Leisure, J.) (citing Studiengesellschaft Kohle MBH v. Shell Oil Co., No. 93 Civ. 1868, 1993 WL 403340, at *4 (S.D.N.Y. Oct. 7, 1993)).

This precept is applicable to the instant action, where neither Indian Harbor, Penn, nor FM reside in New York, and, while the locus of operative facts is undefined, it is definitely not New York. Plaintiffs argue that their choice of forum is entitled to significant weight regardless of their residence. (Pls.' Opp'n at 15 (citing GPA Inc, 1994 WL 537017, at *3).) However, in GPA Inc., the Court found that the parties had not yet established whether contract negotiations occurred in New York, and weighted that defendants maintained executive offices in New York. 1994 WL 537017, at *2-3. There is no such consideration here. Further, plaintiffs' reliance on the forum selection clause in the Indian Harbor policy is unavailing as it does not pertain to the instant litigation seeking declaratory judgment as to FM's obligations under the FM policy. The

clause somewhat mitigates the appearance of forum shopping and the "artificial quality" that causes the Court to afford plaintiffs' forum choice less weight when there is a tenuous relationship between plaintiffs and the forum. See Bristol-Myers Squibb Co., 2003 WL 22888804, at *2. This argument, too, is inapposite, however as the clause does not bind FM, an unnamed, non-signatory to the Indian Harbor policy, to litigate in the Southern District of New York. See Mellon Stuart Co. v. N. River Ins. Co., No. 88 Civ. 4847, 1990 WL 13168, at *4 (S.D.N.Y. Feb. 8, 1990) (determining that a party who was not a "claimant" as contemplated by the forum selection clause in a bond agreement was not bound by the clause); Third Ave. Trust v. SunTrust Bank, 163 F. Supp. 2d 215, 221 (S.D.N.Y. 2001) (requiring that a party have knowledge of the forum selection clause to be bound by it). Plaintiffs attempt to overcome this deficiency by couching their Complaint in terms of a declaratory judgment regarding Indian Harbor's obligations under its policy. This attempt falls short, however, as the Complaint seeks declaratory judgment of Indian Harbor's obligations only in relation to this Court's determination of FM's obligations under the FM policy. It is not alleged that FM has any obligation pursuant to the Indian Harbor policy, nor would such an allegation be successful.

In sum, New York is neither Indian Harbor nor Penn's home forum, nor is it the locus of operative facts, as discussed supra Discussion Part I.B. Therefore, this Court will not give great weight to plaintiffs' choice of forum.

D.  Forum's Familiarity with Governing Law

If tried in the Southern District, the instant action will be governed by New York State choice of law principles. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). New York requires that the Court apply the law of the jurisdiction having the most significant contacts with the dispute at issue. Royal Ins. Co., 2002 WL 31385815, at *4 (citing Olin v. Ins. Co. of N.

Am., 743 F. Supp. 1044, 1048 (S.D.N.Y. 1990), aff'd, 929 F.2d 62 (2d Cir. 1991)). New York courts have considered several factors in determining which state's law to apply in cases involving insurance contracts, including: "(1) the location of the insured risk; (2) the policyholder's principal place of business; (3) where the policy was issued and delivered; (4) the location of the broker placing the policy; (5) where the premiums were paid; and (6) the insurer's place of business." Transatlantic Reinsurance Co. v. Cont'l Ins. Co., No. 03 Civ. 3227, 2003 WL 22743829, at *5 (S.D.N.Y. Nov. 20, 2003).

Here, FM asserts Pennsylvania law will govern this dispute and plaintiffs concede this is likely. However, plaintiffs claim that a possible follow up dispute between plaintiffs will be governed by New York law based on the forum selection clause in the Indian Harbor policy. As stated above, this argument is a red herring as no cross-claim is asserted between plaintiffs and thus, their independent forum selection clause is irrelevant to this Court's declaration of FM's obligations under the FM policy at issue. Accordingly, while the Court does not have enough information on the present record to determine whether Pennsylvania or Connecticut law will govern, it is clear that New York law will not. Therefore, the Eastern District of Pennsylvania will be as familiar, and likely much more so, with the governing law than the instant Court. See Mitsui Marine, 245 F. Supp. 2d at 527 ("All federal courts are presumed to be fully capable of ruling on nationally applicable legal principles.") (quoting TM Claims, 143 F. Supp. 2d at 407).

E.  Trial Efficiency and the Interest of Justice

The Court's consideration of whether transfer is in the interest of justice is "based on the totality of the circumstances," Mitsui Marine, 245 F. Supp. 2d at 527 (quoting TM Claims, 143 F. Supp. 2d at 407), and "relates primarily to issues of judicial economy," id. (citing Royal & Sunalliance, 167 F. Supp. 2d at 578).

In support of its argument for transfer, FM points to the relative congestion of the Eastern District of Pennsylvania and Southern District of New York dockets. (Def.'s Mem. at 19; Wolf Aff. ¶ 2.) "Although certainly not decisive, docket conditions or calendar congestion of both the transferee and transferor districts is a proper factor and is accorded some weight." Miller, 1993 WL 378585, at *5. FM demonstrates that the average time from filing to trial is 26.8 months in the Southern District of New York, as compared to 16 months in the Eastern District of Pennsylvania. (Wolf Aff. Exs. A, B.) This is a significant difference, and therefore, the Court grants the appropriate weight to the docket congestion factor.

FM also asks that the Court consider the "local interest in having localized controversies decided at home." Sheet Metal Workers' Nat. Pension Fund v. Gallagher, 669 F. Supp. 88, 92 (S.D.N.Y. 1987) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947)). In the instant case, the trial court must dispose of a controversy arising in Pennsylvania, which will determine the rights of a prominent Pennsylvania institution. This is an inherently Pennsylvania-based claim, despite the location of the insurer, as Pennsylvania is the locus of operative facts and many of the potential witnesses reside in Pennsylvania. See supra Discussion Parts I.A, B.

Moreover, plaintiffs do not offer witnesses, documents or any other factors to counter the totality of factors demonstrating that New York is the appropriate venue for this action. Thus, the Court is not concerned that transfer will "switch the balance of inconveniences from one side to the other," Stinnes Interoil, Inc. v. Apex Oil Co., 604 F. Supp. 978, 983 (S.D.N.Y. 1985), as plaintiffs articulate no inconvenience to litigating in Pennsylvania. The only proposed inconvenience is the plaintiffs' shared forum selection clause, which is irrelevant to FM's obligations under the FM policy. See supra Discussion Part I.D.

For these reasons, the Court finds that, under the totality of circumstances, transfer best serves the interest of justice.

II.  Final Disposition

Because the locus of operative facts in the instant action lies outside of the Southern District of New York and neither plaintiff resides there, plaintiffs do not merit the Court's presumption in favor of their choice of New York as the forum for this litigation. The fact that the locus of operative facts likely lies in Pennsylvania weighs strongly in favor of transfer. Also in favor of transfer is the Eastern District of Pennsylvania's familiarity with the anticipated governing law, and the relative lightness of its docket as compared to the Southern District of New York. Moreover, plaintiffs fail to explain why, outside of a forum selection clause irrelevant to the present litigation, the instant Court is the appropriate venue or what inconvenience would be incurred by transfer to the Eastern District of Pennsylvania. Based on the above, the Court finds that FM has made a "clear-cut showing that transfer is in the best interests of the litigation." Miller, 1993 WL 378585, at *2.

## CONCLUSION

For the foregoing reasons, defendant FM's motion to transfer venue to the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1404, is hereby GRANTED.

**SO ORDERED.**
**New York, New York**
August 17, 2005

_____
U.S.D.J.

Copies of this Opinion and Order have been sent to:

Charles Platto, Esq.
Law Offices of Charles Platto, P.L.C.
20 West 64th Street
New York, NY 10024
- and -
8 Beaver Meadow Road
P.O. Box 1111
Norwich, VT 05055

Kevin Gerard Amadio, Esq.
Venzie Phillips & Warshawar
20332 Chancellor Street
Philadelphia, PA 19103

Norman G. Sade, Esq.
Budd Larner, P.C.
11 Penn Plaza, 5th Floor
New York, NY 10001

Robert M. Wolf, Esq.
Budd Larner, P.C.
150 John F. Kennedy Parkway
Short Hills, NJ 07078-2703